United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD CRAIG FISH,<br>  Plaintiff,<br>  v.<br>MAGNUM AVIATION, et al.,<br>  Defendants. | Case No.18-cv-06671-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

Pro se plaintiff Ronald Fish sues defendants Magnum Aviation ("Magnum") and Santa Clara County ("the County") for violation of his right to just compensation for the taking of his property under the Fifth Amendment, pursuant to 42 U.S.C. § 1983, and the California Constitution.[1] Dkt. No. 1 at 1. He seeks a declaratory judgment that defendants' anticipated seizure of his private airplane hangars without compensation is an unconstitutional taking under the Fifth Amendment of the U.S. Constitution and "Section 2" of the California Constitution. *Id.* He also seeks a declaratory judgment that the reversion clause in his subleases with Magnum violates the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(19), because the clause is unconstitutional and unconscionable. *Id.* Mr. Fish also seeks an injunction barring defendants from taking possession of his hangars once his sublease expires, or, in the alternative, requiring defendants to compensate him for the hangars. *Id.*

Magnum filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 15. The Court heard oral argument on January 29, 2019. Dkt. No. 25.

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 4, 11, 14.

Having considered the parties' motion papers and arguments made at the hearing, the Court grants Magnum's motion to dismiss without leave to amend.

**I.      BACKGROUND**

Mr. Fish is an attorney and airplane owner who resides in Los Gatos, California. Dkt. No. 1 ¶ 1; *see also* Dkt. No. 1 ¶ 23. Magnum is the fixed base operator of the South County Airport in Santa Clara County. *See id.* ¶¶ 8, 10; *see also* Dkt. No. 15 at 3. Mr. Fish owns two portable airplane hangars at the airport. Dkt. No. 1 ¶ 1. The hangars sit on land that Mr. Fish subleases from Magnum, who in turn leases the land from the County. *Id.* ¶¶ 1-3. The County owns the land on which the South County Airport is located. *Id.* ¶ 2.

The following facts are taken from the complaint. In 1985, 2 Genes Aviation ("2 Genes"), Magnum's predecessor-in-interest as the airport fixed base operator, began building airplane hangars on the airfield at the South County Airport. 2 Genes funded the construction of the hangars by selling the hangar structures to private buyers and subleasing the land on which the hangars were located to the buyers. Dkt. No. 1 ¶¶ 2, 8-10.

In 1995, the County and 2 Genes executed a master lease agreement for the airfield land. *Id.* ¶¶ 1, 10-11. At some point, Magnum replaced 2 Genes as the fixed base operator and as the lessee on the master lease. *Id.* ¶¶ 3, 10. The master lease contains the following reversion clause: "Upon expiration of this lease agreement, Lessee agrees to immediately surrender possession of the premises and any improvements thereon to Lessor. . . . All improvements shall become the property of Lessor free and clear of all liens and encumbrances." *Id.* ¶¶ 10-11.

Sometime before December 12, 1995, Mr. Fish purchased a hangar designated as B2 from 2 Genes. *Id.* ¶ 10, 12. At the time he purchased the hangar, he was unaware of the reversion clause in the master lease agreement and did not know that the hangar might revert to 2 Genes (and subsequently to the County) upon expiration of the master lease. *Id.* However, on December 12, 1995, Mr. Fish, in his capacity as the President of Ronald Craig Fish, a Law Corporation ("Fish Law Corp"), executed a sublease agreement for the land on which the B2 hangar sat. *Id.* ¶¶ 11-12; *see also id.*, Ex. C. The B2 sublease agreement states in relevant part:

Upon the expiration of this Lease Agreement [on December 11,

2

United States District Court
Northern District of California

> 2020], Lessee agrees to immediately surrender possession of the
> Hangar Space and any improvements thereon to Lessor. However,
> Lessee may elect to remove the Hangar from the Hangar Space prior
> to the expiration of the term of this Lease. . . . All improvements
> shall become the property of the Lessor, free and clear of all liens
> and encumbrances should the Lessee elect not to, nor cause removal
> of the Improvement (the Hangar.) prior to the expiration of the
> Lease Agreement.

*Id.*, Ex. C at 1 ¶ 2. Paragraph 10 of the B2 sublease agreement includes a reversion clause similar to the one in the master lease agreement: "All and any alterations, improvement or modification to the Hangar Ground Space, including the Hangar structure, shall become Lessor's property and shall remain on the Hangar Ground Space at the expiration of this agreement, without compensation, remuneration or payment to the Lessee." *Id.* at 3 ¶ 10.

In 2005[2], Mr. Fish purchased a second hangar, designated as C5, for $30,000. *Id.* ¶¶ 1, 13. The C5 sublease, which Mr. Fish assumed, also includes a reversion clause. *Id.* ¶ 13.

The master lease between the County and Magnum expires on December 11, 2020, and all of the subleases—including Mr. Fish's—expire on that same day. Now that the expiration date draws nearer, Mr. Fish has discovered that moving his hangars elsewhere would be either impossible due to lack of available space at nearby airports or prohibitively expensive, and therefore he believes that the County will ultimately seize his hangars once the master lease and the subleases expire. *Id.* ¶¶ 20, 22-23, 25-26.

Mr. Fish filed this action on November 2, 2018. *Id.* ¶ 34; *see generally* Dkt. No. 1.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must

---

[2] The 2005 date appears in the complaint, but in his opposition brief, Mr. Fish states that he purchased the C5 hangar in 2008. Dkt. No. 18 at 5.

3

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where a plaintiff appears pro se, as in this case, "the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc); *accord Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987).

## III. DISCUSSION

### A. Section 1983 Claim

#### 1. Standing and ripeness

As a threshold issue, Magnum argues that (1) Mr. Fish lacks standing because the sublessee is Fish Law Corp, not Mr. Fish individually, and (2) Mr. Fish's claims are not ripe because neither Magnum nor the County have taken possession of the hangars and it is unclear whether they will, in fact, exercise their right to do so once the master lease agreement expires in December 2020. Because Magnum's motion may be disposed of on other grounds, the Court assumes without deciding for the purposes of this motion that Mr. Fish has standing and that his claims are ripe.

#### 2. Under color of state law

To state a claim under section 1983, Mr. Fish must plead facts sufficient to show that Magnum, acting under color of state law, deprived him of federal rights, privileges, or immunities, and caused damages. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).

The complaint does not expressly plead that Magnum is a private entity, but the allegations

4

in the complaint concerning the litigation and arbitration between the County and 2 Genes—Magnum's predecessor-in-interest—suggest that both 2 Genes and Magnum are private entities. Dkt. No. 1 ¶¶18-19, Ex. B at 4. Magnum asserts that it is solely a private entity. Dkt. No. 15 at 10. Mr. Fish does not dispute that assertion.

Section 1983 liability attaches only to private individuals "who carry a badge of authority of a State and represent it in some capacity." *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)) (internal quotations omitted). A section 1983 plaintiff must show that a private individual's actions are "fairly attributable" to the government. *Id.* (citing *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989)). A private individual's actions may be "under color of state law" where there is "significant" state involvement in the action. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (describing four tests for determining state action).

Mr. Fish does not contend that Magnum acted under color of state law, and he pleads no facts that would support such a contention. The complaint pleads only that Magnum is the fixed base operator of the airport, it assumed 2 Genes' place on the master lease and sublease agreements, and it collected rent from the sublessees. *See* Dkt. No. 1 ¶¶ 1, 30. Because the complaint does not plead any facts suggesting that Magnum acted under color of state law, the Court finds that Mr. Fish has failed to state a section 1983 claim against Magnum.

### 3. Fifth Amendment taking

A physical taking occurs when the government physically takes possession of an interest in property for some public purpose. *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088 (9th Cir. 2015). A plaintiff "seeking compensation from the government for an alleged taking of private property must, at a minimum, assert that *its* property interest was actually taken by the government action." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1215 (Fed. Cir. 2005) (emphasis original). Here, Mr. Fish has not pled that his property interest was actually taken, much less taken by government action. As the complaint states and Mr. Fish acknowledges, the hangars are portable and currently in his possession. *See* Dkt. No. 1 ¶¶ 20-23; Dkt. No. 18 at 9 (admitting that "the taking of the privately owned hangars at South County

Airport has not yet occurred"). The hangars will only be seized if he leaves them on the site after his subleases expire.

At the hearing, Mr. Fish seemed to suggest that the County ultimately will be responsible for the taking of his property because the hangars will revert to Magnum only briefly before automatically reverting to the County. *See also* Dkt. No. 1 ¶ 3. However, at the time that the hangars pass from Magnum to the County, Mr. Fish's interest in the hangars will already have been extinguished, and he appears to not have any takings claim (or future takings claim) against the County at that time. *Air Pegasus*, 424 F.3d at 1215–16 ("Air Pegasus's economic injury is not the result of the government taking Air Pegasus's property, but is the more attenuated result of the government's purported taking of other people's property. This circumstance does not form the basis for a viable takings claim."). In any event, Mr. Fish fails to explain how Magnum would be liable for the County's taking.

Even if Magnum could be said to be a state actor, the nature of the reversion is not a taking. Magnum and the County entered into the master lease agreement and the sublease agreements in their capacities as landowner parties to a contract. "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978). As the Supreme Court has noted, "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." *Hughes Commc'n Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (2001) (citing *id.*).

Because it appears that both Magnum and the County were acting solely in their commercial or proprietary capacities, Mr. Fish fails to state a claim that the reversion clause in his subleases operates as a taking in violation of his Fifth Amendment rights.

### 4. Statute of limitations

The statute of limitations for Mr. Fish's section 1983 claim is two years. *See Action*

6

*Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, and in California, that limitations period is two years.") (internal citations omitted). Generally, the limitations period begins to run when a potential plaintiff knows or has reason to know of the asserted injury. *Id.* at 1026–27.

Mr. Fish knew or had reason to know as of December 12, 1995 that the hangars would revert to 2 Genes/Magnum (and thereafter to the County) if he did not remove them prior to the subleases' expiration on December 11, 2020. Mr. Fish's subleases explicitly state that, upon expiration, he must immediately surrender possession of the hangars and their ground space, which then become 2 Genes/Magnum's property, unless he moves the hangars first. Indeed, in his opposition, Mr. Fish admits that he was aware of the reversion clause in the subleases in 1995 and believed the clause to be unconstitutional at that time. Dkt. No. 18 at 17. The statute of limitations therefore began to run on December 12, 1995 and ended on December 12, 1997—20 years before Mr. Fish filed this action.

In his opposition brief, Mr. Fish does not suggest that his delay should be excused or that the statute of limitations should be tolled. Instead, he argues (without citation to any authority) that a section 1983 claim that seeks declaratory relief based on a future event may be filed at any time. Dkt. No. 18 at 15 ("There can be no time bar under 42 U.S.C. [§] 1983 on a thing that will happen two years in the future."). Mr. Fish asserts that he did not know until a few months prior to filing suit that it would be so difficult and expensive to move the hangars. *Id.* at 17, 18. But the difficulties and hardships involved in moving the hangars today does not change the fact that Mr. Fish knew in 1995 that, if left standing, the hangars would revert to 2 Genes/Magnum. Mr. Fish provides no reason why, after forming the belief that the reversion clause was unconstitutional as far back as 1995, he sat on his claim until 2018. *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394, 300 (9th Cir. 1980) (recognizing that a statute of limitation's purposes are to assure fairness to defendants and to relieve courts "of the burden of trying stale claims when a plaintiff has slept on his rights") (quoting *Burnett v. N.Y. Central R.R.*, 380 U.S. 424, 428 (1965)).

At the hearing, Mr. Fish advised the Court that he could plead no other facts to remedy the

7

problems identified above and to otherwise support his section 1983 claim. Because it appears beyond doubt that granting Mr. Fish leave to amend his section 1983 claim would be futile, the Court dismisses this claim without leave to amend. *Noll*, 809 F.2d at 1448; *Music v. Bank of Am., N.A.*, 717 F. App'x 658, 661 (9th Cir. 2017) ("[W]here the [plaintiff] fails to point to any facts that could save the complaint, the district court does not abuse its discretion by dismissing with prejudice.").

### B. California Constitution Claim

Mr. Fish purports to assert a claim against defendants for violation of his "constitutional right to just compensation" under "Section 2" of the California Constitution. Dkt. No. 1 at 1. The California Constitution contains 35 articles, 33 of which contain at least two sections. *See generally* Cal. Const. art. I-XXXV. The Court proceeds on the assumption that Mr. Fish intends to assert an inverse condemnation claim based on article I, section 19, subsection (a), which states: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."[3]

#### 1. Inverse condemnation

An inverse condemnation claim may not be maintained against a private entity that lacks the powers of condemnation such as those enjoyed by public utilities or educational institutions. *Sheffet v. Cty. of Los Angeles*, 3 Cal. App. 3d 720, 732 (1970). The complaint fails to allege that Magnum possesses the power of eminent domain such that it may be liable for inverse condemnation. And as discussed above, Mr. Fish does not plead that Magnum has acted on behalf or at the behest of the County, or that Magnum's conduct was or will be anything other than the conduct of a party to a contract. *Cty. of Ventura v. Channel Island Marina, Inc.*, 159 Cal. App. 4th 615, 624–25 (2008) ("The rights and duties of the parties spring from the lease. . . . To say that a breach of contract or lease implicates the Fifth Amendment to the United States Constitution or article I, section 19 of the California Constitution, stretches the meaning of those provisions well beyond reason."). Consequently, the complaint fails to state a claim against Magnum for inverse

---

[3] Article I, section 2 concerns free speech rights that are not implicated in the complaint.

8

condemnation. *Oliver v. AT&T Wireless Servs.*, 76 Cal. App. 4th 521, 530 (1999).

### 2. Statute of limitations

Magnum asserts that the three-year statute of limitations under California Code of Civil Procedure § 338(j) applies here, because Mr. Fish alleges an inverse condemnation claim for loss or damage to his hangars. Dkt. No. 15 at 12 (citing *Bookout v. State of California ex rel. Dep't of Transp.*, 186 Cal. App. 4th 1478, 1484 (2010)). Mr. Fish does not dispute that section 338(j) provides the proper statute of limitations for his claim.

Mr. Fish argues that although he still owns and controls the hangars, there has been a taking by virtue of the fact that his hangars have lost market value due to the uncertainty of reversion, and he is unable to re-sell them for their purchase price. Dkt. No. 18 at 15; *see also* Dkt. No. 1 ¶ 22. However, the uncertainty associated with the reversion clause existed in 1995, when Mr. Fish executed the subleases containing the clause. Dkt. No. 1, Exh. C. Thus, Mr. Fish's claim accrued in 1995. As with his section 1983 claim, Mr. Fish's inverse condemnation claim is time-barred.

Because it appears that amendment would be futile, the Court dismisses this claim without leave to amend. *Noll*, 809 F.2d at 1448; *Music*, 717 F. App'x at 661.

### C. CLRA Claim

#### 1. Notice

Mr. Fish seeks a declaration that the reversion clause in his subleases is unconscionable in violation of the CLRA, Cal. Civ. Code § 1770(19). Dkt. No. 1 at 1. The CLRA requires a plaintiff asserting a claim for damages under its provisions to provide notice to the prospective defendant of the alleged violations and demand correction at least 30 days before filing suit. Cal. Civ. Code § 1782(a). Mr. Fish does not plead that he provided the requisite notice, and Magnum contends that he did not. Dkt. No. 15 at 16.

Mr. Fish does not appear to dispute that he was required to provide 30-day notice under section 1782(a), and he appears to concede that he failed to provide notice altogether. Mr. Fish says that providing notice would have been pointless because there was nothing Magnum could have done to correct the unconscionability of the reversion clause. Dkt. No. 18 at 18. But whether

9

Magnum could or would have done anything to address the reversion clause within the 30-day period is beside the point. Mr. Fish was required to provide notice and did not do so. The Court, therefore, must dismiss any CLRA claim for damages. *Keilholtz v. Lennox Hearth Prods., Inc.*, No. C 08-00836 CW, 2009 WL 2905960, at *2–3 (N.D. Cal. Sept. 8, 2009) (noting that section 1782(a)'s notice requirements "must be literally applied and strictly construed"); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1015–17 (N.D. Cal. 2014) (dismissing CLRA claim as to specific products not adequately described in deficient CLRA notice).

### 2. Statute of limitations

Even if Mr. Fish were able to plead notice or disavowed any claim for damages, his claim would still be barred. CLRA claims are subject to a three-year statute of limitations that begins running from the time when a reasonable person would have discovered the basis for a claim. Cal. Civ. Code § 1783; *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 796 (N.D. Cal. 2017). As discussed above, Mr. Fish discovered the reversion clause in his subleases at the latest on December 12, 1995. His claim under the CLRA is therefore time-barred.

Because it appears that amendment would be futile, the Court dismisses this claim without leave to amend. *Noll*, 809 F.2d at 1448; *Music*, 717 F. App'x at 661.

### D. Declaratory and Injunctive Relief

Mr. Fish seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as injunctive relief. Dkt. No. 1 at 1. It is unclear from the complaint whether he means to assert standalone claims for declaratory and injunctive relief, or whether he merely seeks such relief as remedies for other claims.

To the extent Mr. Fish attempts to assert standalone claims for declaratory and injunctive relief, he may not do so. "[D]eclaratory relief is not an independent cause of action"—only a remedy. *VIA Techs., Inc. v. SONICBlue Claims LLC*, No. C 09-2109 PJH, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. It only permits the district court to adopt a specific remedy when jurisdiction exists."); *Spangler v. Selene Fin. LP*, No. 16-cv-05103-WHO, 2016 WL 5681311, at *7 (N.D. Cal. Oct. 3,

2016) (dismissing claim for declaratory judgment because declaratory relief is not an independent cause of action and plaintiff's complaint otherwise failed to state a claim under which any relief could be granted). Likewise, a request for injunctive relief is not a standalone claim, but rather requires some other substantive basis for liability. Federal and California state courts have held that an "injunction is a remedy, not a cause of action." *See, e.g.*, *Lutz v. CBRE Grp., Inc.*, Case No. 3:12-CV-2625-JM (DHB), 2013 WL 4102157, at *9 (S.D. Cal. Aug. 13, 2013) ("As injunctive relief is a type of relief, [defendant's] motion [to dismiss] is granted without leave to amend as to this 'claim.'"); *Roberts v. Los Angeles Cnty. Bar Ass'n*, 105 Cal. App. 4th 604, 618 (2003) (noting plaintiff's non-opposition to argument that cause of action for injunction was improper because an injunction is a remedy rather than a cause of action); *McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (1997) (stating that "injunctive relief is a remedy and not, in itself a cause of action").

Because the Court finds Mr. Fish has not stated any claim for which he might be entitled to declaratory or injunctive relief, the Court dismisses his demand for these remedies.

## IV. CONCLUSION

At the hearing, Mr. Fish indicated that he could not plead additional or different facts in support of any of his claims to overcome the issues discussed above. The Court therefore finds that granting leave to amend would be futile, and dismisses all claims against Magnum without leave to amend.

**IT IS SO ORDERED.**

Dated: February 19, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge